UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROSEMARY COON,<br><br>                    Plaintiff,<br><br>    v.<br><br>CENTRAL WASHINGTON HOSPITAL,<br><br>                    Defendant. | NO: CV-10-194-RMP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

      This matter comes before the Court on a summary judgment motion, ECF No. 18, and a motion to strike, ECF No. 35, by Defendant Central Washington Health Services Association, d/b/a Central Washington Hospital ("Hospital"). The Court has reviewed the parties' filings related to both motions and the remaining record in this case, heard oral argument on September 29, 2011, and is fully informed.

BACKGROUND

      Ms. Coon sued the Hospital, her former employer, for: (1) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., by interfering

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

with, restraining, and retaliating against Ms. Coon's exercise of her rights under the FMLA; (2) discrimination on the basis of disability in violation of the Washington Law Against Discrimination, Chapter 49.60 RCW ("WLAD"); and (3) for wrongful discharge in violation of public policy. ECF No. 1. Plaintiff agrees that her wrongful discharge in violation of public policy claim should be dismissed. ECF No. 27 at 2. Plaintiff also stipulates to dismissal of her retaliation claim under the FMLA. ECF No. 27 at 2. Therefore, Plaintiff defends against Defendant's motion only as to her FMLA interference claim and her claim for disability discrimination under WLAD.

## FACTS

The following facts are undisputed, unless otherwise noted. Ms. Coon began working for the Hospital in 1972. At the time of the events at issue in this case, Ms. Coon worked as an administrative assistant in the Quality Care Management ("QCM") department of the Hospital. Marcy Vixie is the director of the department.

Ms. Coon was diagnosed with cancer in spring 2009. Ms. Coon underwent surgery for her cancer followed by six intense chemotherapy treatments that were in turn followed by a six-week course of radiation treatments. Dep. of Rosemary Coon, ECF No. 30-1 at 3-4. Ms. Coon took FMLA leave for one week after each of the six chemotherapy treatments, which ended in August 2009. Ms. Coon also

1  took leave intermittently for the radiation therapy that began approximately one
2  month later.  At the conclusion of radiation therapy, Ms. Coon began to take a
3  chemotherapy maintenance drug, which she was scheduled to take until April
4  2010.  By January 2010, Ms. Coon was taking 15 minutes of leave at the beginning
5  of her shift each workday to maintain her FMLA status.

6       Ms. Vixie authorized all of the leave that Ms. Coon took.  Ms. Coon
7  maintains that Ms. Vixie resisted granting Ms. Coon more leave when she
8  developed an infection while taking FMLA leave for chemotherapy treatment, but
9  Ms. Vixie eventually granted more leave after the involvement of Hospital human
10 resources staff.  Several of the employees working under Ms. Vixie in the QCM
11 department had taken FMLA leave before Ms. Coon took leave.  Ms. Coon
12 emphasizes that Ms. Vixie's work relationships with three former QCM
13 department employees deteriorated because of, or around the same time as, those
14 employees' FMLA leave.

15      Ms. Coon received positive performance reviews from Ms. Vixie throughout
16 her employment.  However, the parties dispute whether Ms. Vixie expressed
17 dissatisfaction with Ms. Coon's work performance, specifically with respect to
18 diminished efficiency, during or around the period of her FMLA leave.  *Compare*
19 ECF No. 30-1 at 11 at *with* ECF No. 30-2 at at 7-9.
20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 3

Prior to February 2010, the QCM department had one full-time equivalent Administrative Assistant position filled by two people. Ms. Coon worked Monday through Thursday in the position, and Debbie Miller worked Friday in the position. Other non-management positions in the QCM department included Quality Specialist, Data Specialist II,[1] and Medical Staff Specialist. Ms. Miller also worked part-time as a medical staff specialist in the department. The parties dispute whether Ms. Coon could have worked as a medical staff specialist without additional training or skills.

The Hospital began experiencing financial difficulties in approximately fall 2009. On December 17, 2009, John Hamilton, the Hospital's chief executive officer, sent an email to Ms. Vixie and six other Hospital managers explaining that the Hospital was in the process of responding to its severe financial losses by taking "a series of actions to improve [its] financial performance." ECF No. 22 at 7. One such action was layoffs, and Mr. Hamilton's email requested that each

---

[1] There was also an unfilled position for a Data Specialist I in the department, which Ms. Vixie had determined was not needed and had left unfilled for more than one year prior to Ms. Coon's termination. ECF No. 24 at 3-4.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

recipient "develop a list of two positions that might be eliminated and a short description of the impact."[2]  ECF No. 22 at 7.

On December 21, 2009, Ms. Vixie responded to Mr. Hamilton's request with a memorandum.  Ms. Vixie prefaced her identification of potentially dispensable positions by writing, "First, I want to say that I believe we are lean in QCM, already prioritize our work, and each of our employees does a good job."  ECF No. 22 at 8.  Ms. Vixie then identified the administrative assistant position, which consisted of one full-time equivalent ("FTE") position, as the position that would have the least negative impact on the QCM department and its ability to provide QCM services if it were eliminated.  ECF No. 22 at 8.  Ms. Vixie identified a quality specialist position, of which there were "4.3 RN FTEs" at the time of Ms. Vixie's memorandum, as the second least crucial FTE position.  Mr. Hamilton responded that he intended for the QCM department to terminate only one FTE position.

The Hospital had a "Layoff/Reduction in Hours" policy in place in January 2010.  That policy provides in relevant part:

> Individuals selected for layoff or reduction in hours will be identified in the following manner:

---

[2] One of the manager recipients was asked to provide a list of three positions potentially to be eliminated.  ECF No. 22 at 7.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

    A.    Surplus full time equivalents (FTEs), as a result of reduction of workload volumes, budgetary requirements, reassignments/redesigns of work responsibilities, changes will be identified by Departmental Managers.
    B.    Managers will determine which positions or hours within their respective work units will be eliminated or reduced.
    C.    The manager will communicate the layoff decision individually to affected employees at least fourteen (14) days in advance of effective date of layoff. . . .
    D.    When two (2) or more employees have positions in a job class for which there is a surplus of FTEs, the least senior employee will be laid-off or reduced in hours, provided the senior employee's skills, competencies, qualifications, training, and recent experience are equal as determined by the Department Managers.
    E.    Employees assigned to positions that have been eliminated will be offered a similar position within the same or similar work unit provided they meet the qualification requirements of the vacant position.
        a)    If this is not possible the employee may choose to:
            i.    Select layoff and be placed on reinstatement roster.
            ii.    Apply for a different position.
            iii.    Accept a pool position if available.

ECF No. 52 at 12.

After selecting Ms. Coon as the individual to be laid off from the QCM department, Ms. Vixie consulted with the Hospital's human resources director, Jack Powers, who reviewed the layoff policy with Ms. Vixie and determined that "it would be proper to lay off Rosemary Coon." ECF No. 23 at 2. Mr. Powers also inquired with Pete Philips, the Hospital's FMLA coordinator, regarding whether the layoff of Ms. Coon would raise any FMLA compliance issues. Mr. Philips responded that the Hospital had complied with FMLA in its dealings with

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1  Ms. Coon.  Mr. Powers did not ask Mr. Philips whether the layoff of Ms. Coon

2  complied with the Hospital's layoff policy.

3      On January 27, 2010, Ms. Coon was notified that she would be laid off

4  effective January 29, 2010.  Although Ms. Miller, who shared the administrative

5  position with Ms. Coon by working on Fridays, was laid off from the

6  administrative assistant position, Ms. Miller continued to work part-time in her

7  position as a medical staff specialist.  Thus, the only person laid off from the QCM

8  department was Ms. Coon.  Nineteen other people were laid off from other

9  departments of the Hospital.  The Hospital has not filled the administrative

10 assistant position since Ms. Coon's layoff.

## ANALYSIS

12    The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. §

13 1331 and 29 U.S.C. § 2617 for the FMLA interference claim and supplemental

14 jurisdiction over the WLAD disability discrimination claim, 28 U.S.C. § 1367.

15    *Motion to Strike*

16    As a preliminary matter, the Defendant moves to strike the portion of Ms.

17 Vixie's deposition in which she discusses her treatment of and interactions with

18 former QCM employees who had taken FMLA during their employment at the

19 Hospital.  Defendant maintains that the evidence is improper under Fed. R. Evid.

20

404, and does not meet the test for admissibility of "other act" evidence set out by *Duran v. City of Maywood*, 221 F.3d 1127 (9th Cir. 2000).

Plaintiff opposes the motion to strike on the ground that evidence of an employer's treatment of other employees is admissible to show motive or intent in many wrongful discharge contexts.

The Court denies Defendant's motion and considers all evidence Plaintiff submitted in response to Defendant's motion for summary judgment and in response to Defendant's motions in *limine* seeking to exclude evidence of Ms. Vixie's interaction with certain employees who took FMLA leave. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261 (11th Cir. 2008) (holding that evidence of racial discrimination against four black coworkers of plaintiff who were discharged under different circumstances from plaintiff was not admissible as evidence of a pattern of conduct or routine practice by the employer but was admissible to show intent of a common decision maker).[3]

---

[3] The Court applies the Federal Rules of Evidence to this procedural matter. *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995). Even if the Court were to find the issue to be substantive and apply Washington state law, the result would be the same. *See Brundridge v. Fluor Federal Services, Inc.*, 164 Wn.2d 432, 445 (2008).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1  *Summary Judgment Standard*

2  Summary judgment is appropriate "if the movant shows that there is no
3  genuine dispute as to any material fact and the movant is entitled to judgment as a
4  matter of law." Fed.R.Civ.P. 56(a).  A key purpose of summary judgment "is to
5  isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*,
6  477 U.S. 317, 323-24 (1986).  Summary judgment is "not a disfavored procedural
7  shortcut," but is instead the "principal tool[ ] by which factually insufficient claims
8  or defenses [can] be isolated and prevented from going to trial with the attendant
9  unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at
10 327.

11 The moving party bears the initial burden of demonstrating the absence of a
12 genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party
13 must demonstrate to the Court that there is an absence of evidence to support the
14 non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then
15 shifts to the non-moving party to "set out 'specific facts showing a genuine issue
16 for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

17 A genuine issue of material fact exists if sufficient evidence supports the
18 claimed factual dispute, requiring "a jury or judge to resolve the parties' differing
19 versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors*
20 *Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  At summary judgment, the court draws

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

1  all reasonable inferences in favor of the nonmoving party.  If the nonmoving party
2  produces evidence that contradicts evidence produced by the moving party, the
3  court must assume the truth of the nonmoving party's evidence with respect to that
4  fact.  *T.W. Elec. Service, Inc.*, 809 F.2d at 631.  The evidence presented by both the
5  moving and non-moving parties must be admissible.  Fed.R.Civ.P. 56(e).
6  Furthermore, the court will not presume missing facts, and non-specific facts in
7  affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l*
8  *Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

<span style="text-decoration: underline">*Law Governing the Present Matter*</span>

**Disability Discrimination under WLAD Claim**

The WLAD makes it unlawful "[t]o discharge any person in compensation or in other terms or conditions of employment" because of a disability.  RCW 49.60.180(2).  The WLAD encompasses two types of disability discrimination claims: failure to accommodate claims and disparate treatment claims.  Plaintiff asserts the latter type of claim.

To prevail on an employment discrimination claim under the WLAD, a plaintiff must establish that: (1) she has a disability; (2) she is able to perform the essential functions of the job with or without reasonable accommodation; and (3) her disability was a substantial factor in the employer's decision to terminate her.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

Wash. Pattern Jury Inst. 330.32; *see* RCW 49.60.180(2). The WLAD defines "disability" as:

> (a) . . . the presence of a sensory, mental, or physical impairment that:
>   (i) Is medically cognizable or diagnosable; or
>   (ii) Exists as a record or history; or
>   (iii) Is perceived to exist whether or not it exists in fact.

RCW 49.60.040(7).

The parties agree that Ms. Coon had a disability at the time of her termination and that she was able to perform the essential functions of her job. *See* ECF No. 62 at 6. The only disputed element is whether her disability was a substantial factor in the employer's decision to terminate her.

A plaintiff may establish a prima facie case of discrimination by showing direct evidence of discriminatory motive and that the discriminatory motive was a significant or substantial factor in the employment decision. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 491 (Wash. 1993).

Ms. Coon offers no direct evidence of discrimination. Therefore, to avoid dismissal of her disability discrimination claim at the summary judgment stage, Ms. Coon must survive the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) and adopted in Washington in *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180-82 (Wash. 2001), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214 (Wash. 2006). *Hegwine v. Longview Fibre Co., Inc.*, 162 Wn.2d 340, 354 (Wash. 2007). The

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

plaintiff must first make a prima facie case of disability discrimination by showing that she "(1) is in a protected class (disabled), (2) was discharged, (3) was doing satisfactory work, and (4) was replaced by someone not in the protected class." *Roeber v. Dowty Aerospace Yakima*, 116 Wn. App. 127, 135 (Wash. App. Div. 3 2003). A plaintiff must support each element of her prima facie case with specific and material facts. *Roeber*, 116 Wn. App. at 135 (citing *Marquis v. City of Spokane*, 130 Wn.2d 97, 105 (Wash. 1996)).

Once the employee establishes a prima facie case of discrimination, a rebuttable presumption of discrimination temporarily comes into existence. *Hill*, 144 Wn.2d at 181. At that point, "the evidentiary burden shifts to the defendant to produce admissible evidence of a legitimate, nondiscriminatory explanation for the adverse employment action sufficient to 'raise[ ] a genuine issue of fact as to whether [the defendant] discriminated against the plaintiff.'" *Hill*, 144 Wn.2d at 181 (*quoting Texas v. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, (1981)); *Renz v. Spokane Eye Clinic, P.S.*, 114 Wn. App. 611, 622 (Wash. App. Div. 3, 2002).

If the defendant employer meets that burden, the burden shifts back to the employee to demonstrate that the employer's articulated rationale was not the true reason for its action but rather a pretext for discrimination. *Hill*, 144 Wn.2d at 182;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

*Renz*, 114 Wn. App. at 622, 60 P.3d 106.  If the plaintiff cannot show pretext, the defendant is entitled to judgment as a matter of law.  *Hill*, 144 Wn.2d at 182.

Summary judgment is appropriate even where the plaintiff establishes a prima facie case but rebuts the defendant's proffer of a nondiscriminatory basis for the termination with weak evidence of pretext or if the record contains abundant, uncontroverted evidence of the nondiscriminatory reason for the employer's decision.  *Milligan*, 110 Wn. App. at 637.  Conversely, if the parties meet all three *McDonnell Douglas* intermediate burdens and the record contains reasonable but competing inferences of both discrimination and nondiscrimination, a fact finder must choose between such inferences and summary judgment is inappropriate. *Hill*, 144 Wn.2d at 186.

Ms. Coon was not replaced by anyone after her termination; her position was eliminated.  Therefore, she fails to satisfy the only disputed prima facie element, disparate treatment.  Moreover, even if the Court were to find that Ms. Coon makes a prima facie showing of disability discrimination, Ms. Coon's claim fails to clear the next two hurdles of the *McDonnell Douglas* framework.  The Hospital provides a well-documented, internally consistent nondiscriminatory reason for laying off Ms. Coon—it was facing extreme financial pressures, and the administrative assistant position was the least necessary for the QCM department.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1  With respect to showing that the Hospital's justification is mere pretext, Ms.
2  Coon responds with very weak evidence that her FMLA status or her cancer were
3  substantial factors in her termination.  Ms. Coon makes a blanket assertion in her
4  statement of facts that "[p]revious employees in QCM had experienced difficulties
5  with Marcy Vixie during or following the taking of FMLA leave which resulted in
6  their losing or leaving their jobs."  ECF No. 28 at 12 (citing only to excerpts of Ms.
7  Vixie's deposition).  Ms. Coon specifies in response to Defendant's motions *in*
8  *limine*, that Ms. Vixie's interactions with past employees Carol Dragoo, Stephanie
9  Harrison, and Leta Kravig are relevant to determining Ms. Vixie's intent toward
10 Ms. Coon.

11  Upon examining Ms. Vixie's deposition, the Court finds no justifiable
12 inferences to draw in Ms. Coon's favor from Ms. Vixie's recollections of her
13 treatment of and interactions with past QCM department employees who had taken
14 FMLA leave and later resigned their positions.  All three former employees
15 resigned at different points prior to 2006; they were not laid off.  ECF No 30-2 at
16 26-36.  Ms. Vixie was not Ms. Dragoo's supervisor, and Ms. Vixie only recalls
17 reviewing some of Ms. Dragoo's files at the direction of the department's manager
18 at the time the events took place, in approximately 2002.  ECF No. 30-2 at 25 26.
19 Ms. Harrison had been in her position for one month before taking FMLA leave
20 and was still in the process of orientation.  ECF No. 32-2 at 30.  Ms. Vixie recalls

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

that issues were emerging prior to Ms. Harrison's leave. ECF No. 32-2 at 30. None of the conflict described by Ms. Vixie relates to the FMLA leave. ECF No. 30-2 at 30-32. Ms. Kravig began taking heavy doses of narcotic pain medications during her FMLA leave, and Ms. Vixie requested that Ms. Kravig provide a doctor's release before returning to work. Ms. Kravig resigned before providing the release. ECF No. 30-2 at 36-39. None of the evidence regarding other employees raises a material question of fact as to whether Ms. Vixie was motivated by discriminatory animus in laying off Ms. Coon.

The Plaintiff has failed to provide sufficient evidence to raise a genuine issue of material fact that the Hospital discriminated against Ms. Coon on the basis of her disability. Therefore, the Court finds that the Hospital is entitled to judgment as a matter of law with respect to Ms. Coon's disability discrimination claim under WLAD.

**Family Medical Leave Act Interference Claim**

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any [FMLA rights]." 29 U.S.C. § 2615(a)(1). The FMLA creates "two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and, second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

F.3d 1112, 1122 (9th Cir. 2001); *see also* 29 C.F.R. §825.14 (providing the general rule that an employee is entitled to be returned to the same position, or an equivalent position, that the employee had when the leave commenced).

Any violation of the FMLA itself or of the Department of Labor-issued regulations implementing the FMLA constitutes interference with an employee's rights under the FMLA. 29 C.F.R. § 825.220(b); *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003). The regulations specify as an example of employer interference that "employers cannot use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c). However, an employer's intent is "irrelevant to a determination of liability" in analyzing interference claims. *Sanders v. City of Newport*, ___ F. 3d ___, 2011 WL 905998, *5 (9th Cir. Mar. 17, 2011).

A claim brought under the FMLA's interference provision "does not fall under the 'anti-discrimination' or 'anti-retaliation' provision" of the FMLA, so it is not susceptible to a burden-shifting analysis." *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001).

Ms. Coon argues that the Hospital interfered with, discouraged, and denied her FMLA rights, as prohibited by 29 U.S.C. § 2615(a)(1), by using her protected FMLA leave as a factor in its decision to terminate her. The parties dispute whether the burden of proof is on the Hospital or Ms. Coon to show that the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

Hospital had a legitimate reason to terminate her employment during FMLA leave for purposes of the FMLA interference claim. The Ninth Circuit recently held in *Sanders*, 2011 WL 905998, that "when an employer seeks to establish that he has a legitimate reason to deny an employee reinstatement, the burden of proof on that issue rests with the employer." *Sanders*, 2011 WL 905998 at *8.

In *Sanders*, an employee developed multiple chemical sensitivity in the course of her employment. *Id.* at *1. During the employee's FMLA leave, the employee's physician submitted a letter stating that he believed the employee could return to work as long as she avoided using a certain low-grade paper, which the defendant city had already ceased using during the employee's FMLA leave. *Id.* at *1. The city responded that it could not guarantee the employee a safe workplace, and at the end of two months of correspondence during which the employee continued to request reinstatement, terminated the employee. *Id.* at *2.

The Hospital argues that the *Sanders* holding does not control the analysis in the instant case because Ms. Coon already had been reinstated and was not seeking reinstatement at the time she was terminated, as the plaintiff was in *Sanders*. However, the Hospital's own exhibits and declarations support that Ms. Coon was taking intermittent FMLA leave at the time she was laid off. ECF Nos. 24 at 5, 28; 30-3 at 5. Indeed, Mr. Powers, the Hospital's human resources director, consulted the Hospital's "resident FMLA expert" to "make sure the layoff was legal since

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17


Rosemary was at that time taking intermittent FMLA leave." ECF No. 23 at 3. Therefore, viewing the evidence in the light most favorable to Ms. Coon, the Court finds that Ms. Coon was situated in the posture of an employee seeking to vindicate her right to reinstatement under the FMLA. Therefore, the Hospital bears the burden of proof in demonstrating that there was a legitimate reason to deny Ms. Coon reinstatement by laying her off. *Sanders*, 2011 WL 905998 at *8.

In addition to providing a right to reinstatement, the FMLA and its implementing regulations establish the parameters of that right. That is, "an employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). "An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." *Id.*

The Hospital has shown that Ms. Coon would not have been reinstated when her intermittent FMLA leave was expected to end, in April 2010, or any time between approximately mid-January 2010 and April 2010. The Hospital's financial distress from fall 2009 into the beginning of 2010 is emphasized throughout the emails between Mr. Hamilton and Ms. Vixie and other department managers. Ms. Vixie's resistance to laying off any of the QCM department staff is also evident in her response to Mr. Hamilton, as is her rationale that, if layoff were

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

inevitable, the elimination of the administrative assistant position in the QCM department would have less of a negative impact than elimination of any other FTE position in the department.

Moreover, the language of the layoff policy does not support Ms. Coon's position that Ms. Vixie was obligated to lay off less senior and/or temporary staff rather than Ms. Coon. The layoff policy merely requires a department manager to retain an employee who is more senior when that the choice is between that employee and another employee who is in the same job class. *See* ECF No. 52 at 12. Ms. Coon shared the administrative position with Ms. Miller, and both were laid off from that position. Ms. Miller continued part-time employment in the same position she had previously worked part-time in concurrently with her part-time employment as an administrative assistant. The other positions in the QCM department were not determined by Ms. Vixie to be "surplus" under the layoff policy and Mr. Hamilton's December 2009 directive.

Nor is there a material question of fact as to whether Ms. Vixie violated the layoff policy by not offering Ms. Coon a similar position within the same or similar work unit. *See* ECF No. 52 at 12. There is not an imperative in the policy that the department manager "bump" qualified employees from retained positions to allow a more senior employee from an eliminated position to take their place. The record contains uncontroverted evidence that Ms. Coon would have needed

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

additional training to perform the full range of duties of the other positions in the QCM department.  ECF Nos. 30-1 at 10; 24.  Finally, the Hospital has sufficiently shown that Ms. Coon's FMLA leave was not a negative factor in the decision to lay off Ms. Coon.

Accordingly, **IT IS ORDERED** that:

1. Defendant's motion to strike, **ECF No. 35**, is **DENIED**.
2. Defendant's motion for summary judgment, **ECF No. 18**, is **GRANTED.**
3. All pending motions, if any, are **DENIED AS MOOT**.
4. All pending deadlines and hearing dates are hereby **STRICKEN**.

The District Court Executive is directed to enter this Order, enter Judgment against Plaintiff and in favor of Defendant, without costs or fees for either party, forward copies to counsel, and **close** the file.

**DATED** this 21st of October, 2011.

       *s/ Rosanna Malouf Peterson*
       ROSANNA MALOUF PETERSON
       Chief United States District Court Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20